UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Robert Brewer,

       Plaintiff,

         v.                      Civil Action No. 2:16-cv-326-jmc

Nader Hashim,

       Defendant.

## OPINION AND ORDER
(Docs. 10, 14, 17)

Plaintiff Robert Brewer, proceeding *pro se*, brings this action against Defendant Nader Hashim, a Vermont State Police (VSP) trooper. (Doc. 1.) Brewer's claims arise from an April 2013 traffic stop conducted by Hashim of Brewer's vehicle, Hashim's seizure of a handgun found in the glove compartment of the vehicle, and a subsequent press release about the incident issued by Hashim and the VSP. (*Id.*) Brewer asserts claims under 42 U.S.C. § 1983 for violations of his constitutional rights, a "Computer Fraud" claim brought under two federal statutes, and state law claims of fraud and libel. (*Id.*)

Presently before the Court is Hashim's Motion to Dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 17.) All parties have consented to direct assignment to the undersigned Magistrate Judge. (Docs. 7, 16.) *See* 28 U.S.C. § 636(c). For the reasons stated below, Hashim's Motion to Dismiss (Doc. 17) is GRANTED, and Brewer's Complaint (Doc. 1) is DISMISSED.

**Background**

I.      **Factual Background**

The parties are largely in agreement regarding the relevant facts.  Where they disagree (*see, e.g.*, Doc. 21 at 1), for purposes of ruling on the pending Motion to Dismiss, the Court accepts as true the factual allegations contained in Brewer's Complaint (Doc. 1), as summarized below.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A.      **Traffic Stop and Firearm Seizure**

On April 8, 2013, Brewer's vehicle was stopped by several VSP officers while Brewer was driving south on I-91 in Vermont.  (Doc. 1 at 4–5.)  The officers "ran an NLETS query [which] . . . verified [Brewer's] driver[']s license and vehicle registration as authentic." [1]  (*Id*. at 4, ¶ 9.)  One of the officers asked Brewer if he had a weapon in his vehicle, and Brewer replied that he did.  (*Id*., ¶ 11; Doc. 21 at 1.)  Asked where the weapon was located, Brewer indicated that it was in the glove compartment.  (Doc. 1 at 5, ¶ 12; Doc. 21 at 1–2.)  The officer informed Brewer that, "under Vermont law, it [i]s not a crime to posses[s] a weapon[] and store it in the glove compartment of a vehicle." (Doc. 1 at 5, ¶ 12.)  Another officer then demanded that Brewer exit his vehicle.  (*Id*., ¶ 13.)  Brewer complied, and a subsequent search of his person revealed nothing of interest.  (*Id*., ¶ 14.)  After being informed that the VSP had probable cause to search his

---

[1]  NLETS is an acronym for the National Law Enforcement Telecommunications System, a "federal database of criminal histories . . . that the police can access."  *Culp v. Madigan*, 840 F.3d 400, 403 (7th Cir. 2016).  It is administered by the Federal Bureau of Investigation (FBI).  *See United States v. Hutchinson*, 408 F.3d 796, 799 (D.C. Cir. 2005).

vehicle, Brewer was asked to choose between signing a waiver consenting to the search or having his car impounded.  (*Id.*, ¶ 15.)  Brewer signed the waiver, and the officers searched his car, finding "nothing they considered noteworthy."  (*Id.*, ¶ 16.)

One of the officers then stated: "'You have a conviction and your weapon is therefore illegal.  OK?'"  (*Id.*, ¶ 17.)  Brewer replied: "'It's not OK.  I have no convictions.  I disagree in the strongest possible language,'" and explained that the conviction they referenced had been "set aside on appeal [in around 2005 or 2006], resulting in no conviction."  (*Id.*, ¶ 18.)  Brewer alleges that he "carried in his car the docket sheet showing the appeals court order overturning the lower court ruling"; he does not, however, state that he showed this "docket sheet" to the officers during the traffic stop.  (*Id.*)  The "docket sheet" is apparently attached as Exhibit A to the Complaint, which appears to be an entry order from the Circuit Court of Mobile County, Alabama indicating that an unspecified earlier order of that court was "set aside"; and that Brewer was "placed on probation" for six months, was to have no contact with the victim, and was to pay costs within six months.[2]  (*Id.* at 5, 12; *see also* Doc. 26.)  On the top of the document, the words "SET ASIDE" are handwritten.  (*Id.*)

In any event, the officers "took" Brewer's weapon.  (Doc. 1 at 5, ¶ 19.)  Brewer requested a receipt for the weapon, and it was produced for him at the West Brattleboro State Police Barracks.  (*Id.*)  The receipt listed "Officer Hashim" as "the case officer with overall supervision for the highway stop."  (*Id.* at 5, ¶ 20, 13.)

---

[2] The "docket sheet" attached as Exhibit A to the Complaint is mostly illegible.  (*See* Doc. 1 at 12, labeled "Exhibit A Conviction Vacated on Appeal August 3, 2006.")  The Court therefore relies on the copy of this document that was entered into evidence by agreement of the parties at the May 23, 2017 hearing on the pending Motion to Dismiss.  (*See* Doc. 26.)

**B.     Press Release and Other Post-Stop Events**

Brewer alleges that, "[s]hortly after leaving Vermont, [he] began seeing newspaper [articles] on Google published by two area newspapers purporting to offer accounts of [the subject] highway stop."  (*Id.* at 6, ¶ 31.)  These articles referred to Brewer as a "convicted person" and a "transient person," implied or inferred that he had violated federal gun laws, and stated that he was "under police investigation for criminal activity."  (*Id.*, ¶ 32.)  The articles did not state that Brewer had successfully appealed his prior conviction; nor did they state that Brewer had told the officers where his weapon was located in his car, instead "impl[ying] [that] by dint of dumb luck, police got lucky and 'found' [the] weapon in [Brewer's] car."  (*Id.*)

On January 22, 2014, Attorney Tom Bowen of the New York law firm Coughlin & Gerhart, telephoned Brewer and informed him that he "saw on the Internet one of the [relevant] articles."  (*Id.* at 7, ¶ 34.)  Months later, Attorney Jay Ward Brown of the Washington, DC law firm Levine Sullivan Koch and Schultz, sent Brewer a letter dated June 4, 2014, which enclosed a copy of an April 8, 2013 "Press Release" titled "Law Supplemental Narrative" (referred to herein as the press release).[3]  (*Id.* at 5, ¶ 22; *see id.* at 14, Ex. C.)  The press release lists "Officer Nader Hashim" as its author (*id.*), and states:

---

[3]  Brewer attached a photocopy of the press release to his Complaint, but, like the "docket sheet" attached as Exhibit A to the Complaint, it is mostly illegible.  (*See* Doc. 1 at 14, labeled "Exhibit C Officer Hashim's Press Release of April 8, 2013 Claiming Conviction On My Record.")  The Court therefore relies on the copy of the press release that is attached as Exhibit 1 to Hashim's Motion to Dismiss, to which Brewer has raised no objection.  (*See* Doc. 17-1 at 2; *see generally* Doc. 21.)

On 04/08/2013, at approximately 1:30am, a member of the Vermont State Police performed a motor vehicle stop at mile marker 14.4, on I-91. The operator of the vehicle, identified as Mr. Robert Taylor Brewer, 64, was found to be in possession of a .40 caliber handgun. Further investigation revealed that Mr. Brewer has a prior conviction of domestic assault which, under federal law, prohibits him from possessing a firearm. The firearm was seized by the Vermont State Police, and the investigation is ongoing.

(Doc. 17-1 at 2; *see also* Doc. 1 at 14.) On June 26, 2014, Brewer and two friends "Googled" Brewer's name, retrieving results indicating that Brewer had a prior conviction, was a transient, and had violated federal gun laws. (Doc. 1 at 8, ¶¶ 43–47.)

Brewer's Complaint also details his attempts to attain an administrative remedy, including correcting his record of conviction and regaining possession of his confiscated weapon. Specifically, Brewer alleges that in November 2013, he sent a "Notice of Claim" to Vermont's Attorney General "in order to recover his property" (presumably, the weapon confiscated during the traffic stop), "or receive compensation [for it]." (*Id.* at 6–7, ¶ 33.) In February 2014, Brewer twice telephoned "the officer in charge of internal affairs for the [VSP]," seeking an administrative remedy, but "[n]o one answered the phone on either occasion." (*Id.* at 7, ¶ 35.) On February 7, 2014, an individual at the VSP's Brattleboro barracks advised Brewer that VSP officers are only authorized to rely on prior convictions appearing on an "FBI computer file," and thus even if Brewer had shown the officers conducting the subject traffic stop the "docket sheet" indicating that his conviction had been overturned, his weapon still would have been confiscated. (*Id.*, ¶ 36.)

Failing to obtain an administrative remedy with the VSP, Brewer attempted to file a "criminal history challenge to the FBI's criminal records database." (*Id.*, ¶ 37.) On

February 20, 2014, Brewer wrote a letter to the FBI's "Criminal History Analysis Team at its West Virginia headquarters[,] alleging fraud in the compiling, maintenance, [and] distribution of his records dating back to the year 2006, pointing out [that] he was being scammed because [the] records contained a lower court conviction while ignoring a successful appeal." (*Id*., ¶ 38.) About a month later, in March 2014, Brewer received a written reply from Joseph Sensibaugh, Director of the FBI's Biometric Division, informing Brewer that, "on his behalf, an FBI representative had contacted the Alabama Criminal Justice Information Center," and that "his records challenge had failed, and a non-[f]ederal conviction remained on his record." (*Id*., ¶ 39.)

## II. Procedural Background

This is not the first legal action Brewer has brought in connection with his April 8, 2013 traffic stop: he filed a case involving substantially similar facts in the Northern District of New York on July 31, 2014. *See Brewer v. Rutland Herald*, No. 3:14-cv-958 (GLS/DEP), 2016 WL 4435232, at *1 (N.D.N.Y. Aug. 18, 2016); *see also* No. 3:14-cv-958, ECF No. 1 (Complaint). In that action, Brewer listed as defendants the Rutland Herald and Brattleboro Reformer newspapers, two employees of the Alabama Criminal Justice Information Center, four Google employees, Hashim, and others. *Brewer*, No. 3:14-cv-958, ECF No. 1 at 1, 2016 WL 4435232, at *1. At Brewer's specific request, however, Hashim was not served in that lawsuit and the period for proper service was allowed to lapse. *Brewer*, 2016 WL 4435232, at *1 n.1. Accordingly, on August 18, 2016, the claims against Hashim were dismissed without prejudice for failure to timely serve. *Id*. The court stated as follows with respect to that dismissal: "At the request of

Brewer, defendant[] Hashim . . . ha[s] not been served by the Unite[d] States Marshals Service.  Service has not been otherwise made on [Hashim], and, at this point, well over [60] days has elapsed since the initial filing against them.  Accordingly, the court dismisses Hashim . . . without prejudice." *Id.* (internal citations omitted).  Brewer's claims against the remaining defendants in that case were dismissed on the same date, but on different grounds. *Id.* at *6.

On December 9, 2016, Brewer filed this case in the Northern District of New York.  (Doc. 1.)  Finding that venue was improper in that district, the court transferred the case here, to the District of Vermont, where "the events giving rise to [Brewer's] claims occurred" and where Hashim "presumably" resides.  (Doc. 4 at 3–4.)  On February 21, 2017, Brewer filed a "Motion to Set Aside Forfeiture," seeking the "return and repatriation of [the] firearm" taken from his vehicle during the vehicle stop in April 2013.  (Doc. 10 at 6.)  About a week later, on March 2, 2017, Brewer filed an "Amended Motion to Set Aside Forfeiture; to Cure Improper Service," seeking the same relief sought in the initial "Motion to Set Aside Forfeiture" and requesting "the immediate return of [his] firearm" or a "check in the amount of $450[]" to compensate him for the loss of his weapon and related costs.  (Doc. 14 at 8.)  A few days after that filing, on March 6, 2017, Hashim filed the pending Motion to Dismiss (Doc. 17), addressed herein.  Thereafter, Brewer filed an Opposition to the Motion to Dismiss (Doc. 21), and Hashim filed a Reply to the Opposition (Doc. 23).

On May 23, 2017, the Court held a hearing on Hashim's Motion to Dismiss, and on June 6, 2017, at the Court's request, each party submitted further briefing regarding

the issue of the statute of limitations governing Brewer's claims. (Docs. 29, 30.) Finally, on June 16, 2017, Brewer filed a document titled "Notice of Filing[:] FBI Concludes Investigation Into Plaintiff's Record." (Doc. 32.) Therein, Brewer claims that, as a result of his telephone inquiry to the FBI's Albany, New York office and his submission of "additional information related to the proceedings of *Brewer v. Rutland Herald*," he received a June 7, 2017 letter from William McKinsey, Section Chief of the FBI's Criminal Justice Information Services Division, informing that "his FBI record has been updated to show [that] a conviction for domestic violence was dismissed on August 3, 2006." (*Id.* at 2; *see id.* at 3, "Exhibit A[:] FBI letter to Plaintiff Page 1," stating: "[T]he Alabama authorities authorized the FBI's CJIS Division to modify the disposition for date of arrest September 20, 2005, to reflect that the charge was dismissed on August 3, 2006.")

## Analysis

Brewer alleges that Hashim:[4] (1) violated Brewer's constitutional rights protected by the Due Process Clause and the Privileges and Immunities Clause, in violation of 42 U.S.C. § 1983; (2) engaged in computer fraud under the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq.*, and the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030; and (3) committed the state law torts of fraud and libel. (Doc. 1 at

---

[4] Brewer's filings do not indicate whether Hashim is sued in his official or individual capacity. (*See* Docs. 1, 21.) "[W]here a *pro se* litigant does not specify in what capacity the individual defendants are being sued, courts generally liberally construe the complaint as alleging both official and individual capacity claims." *Preterotti v. Souliere*, Civil Action No. 2:16-cv-72-wks-jmc, 2016 WL 7971319, at *5 (D. Vt. Dec. 28, 2016) (alteration in original) (internal quotation marks omitted), *report and recommendation adopted*, 2017 WL 318798 (D. Vt. Jan. 23, 2017). Therefore, the Court assumes Brewer intended to sue Hashim in both capacities.

8–9.)  For relief, Brewer seeks to enjoin Hashim, as well as "the State of Vermont, its agents and employees," from relying on the FBI record which, Brewer argues, erroneously identifies him as having a prior conviction which would preclude him from carrying a firearm.  (*Id.* at 10, ¶ 63.)  Brewer further seeks "[e]nactment of NYCPL 160.60 stipulating that when an individual wins on direct appeal . . . , a person's legal status is reset to where it was prior to arrest"; the "[r]eturn of [his] firearm," which was "seized erroneously" based on his inaccurate conviction record; pecuniary damages for his "physical, emotional[,] and psychological suffering at the hands of [Hashim]"; and any other relief the Court deems appropriate.  (*Id.* at 10–11, ¶¶ 64–67.)

In the pending Motion, Hashim urges the Court to dismiss Brewer's Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted.  (Doc. 17 (citing Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6).)  Specifically, Hashim contends that the Eleventh Amendment bars all claims against him in his official capacity for lack of subject-matter jurisdiction, and that Brewer's individual capacity claims against him are barred by the applicable statutes of limitations.  (Docs. 17, 23.)  He further asserts that, even if any of the individual capacity claims are not time-barred, each fails to state a claim upon which relief may be granted.  (*Id.*)

## I.     Standard of Review

### A.     Rule 12(b)(6) Motion to Dismiss

Hashim's Motion to Dismiss is brought, in part, under Federal Rule of Civil Procedure 12(b)(6).  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Two principles guide a plausibility determination. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The determination of whether a complaint states a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In addition to considering these principles, where, as here, the complaint was filed *pro se*, it "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights

because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). When a party seeks dismissal of a *pro se* complaint under Rule 12(b)(6), the court applies "a more flexible standard" to evaluate the complaint's sufficiency than it would use to review a complaint submitted by counsel. *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013). Even so, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief." *Hogan*, 738 F.3d at 515.

**B.    42 U.S.C. § 1983**

Reading Brewer's Complaint liberally, his constitutional claims are brought under 42 U.S.C. § 1983. A claimant may bring a suit for damages under § 1983 "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a

procedure for redress for the deprivation of rights established elsewhere." *Thompson*, 949 F. Supp. 2d at 569 (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

## II.     Official Capacity Claims

Hashim argues that Brewer's claims against him in his official capacity are barred by the Eleventh Amendment doctrine of sovereign immunity.  (Doc. 17 at 4–7.)  The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court."  *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  This immunity also protects "state officials sued for damages in their official capacity." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).  Applied here, Brewer's claims against Hashim in his official capacity as a VSP trooper are considered claims against the State of Vermont itself, and are barred by the doctrine of sovereign immunity.

There are, however, three exceptions to the sovereign immunity doctrine: (1) the State has waived its immunity; (2) the State's immunity is abrogated by a valid exercise of Congressional authority; or (3) a state official is sued in an action seeking only prospective injunctive relief.  First, a state can choose to waive its sovereign immunity under the Eleventh Amendment by "mak[ing] a 'clear declaration' that it intends to submit itself to [a federal court's] jurisdiction," *In re Charter Oaks Assocs.*, 361 F.3d

760, 767 (2d Cir. 2004) (second alteration in original) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)), or "by voluntarily invoking federal jurisdiction, as when the state itself brings a federal suit or removes a case from state to federal court," *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). Second, "Congress by statute may abrogate state immunity." *Id.*; *see Will*, 491 U.S. at 66 ("The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citation omitted)).

These two exceptions do not apply here. Vermont has not waived its immunity through an express declaration. *See Thompson*, 949 F. Supp. 2d at 572 ("Vermont has not waived its sovereign immunity under § 1983." (citing 12 V.S.A. § 5601(g) and noting that the "Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived")). And the State has not invoked federal jurisdiction, as it did not initiate this case or remove it to federal court. Moreover, Congress has not abrogated Vermont's immunity by statute. *See Muhammad v. Gold*, No. 1:05–CV–146, 2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983."); *see also Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).

Third, under the *Ex parte Young* exception to the sovereign immunity doctrine, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against

individual state officers, as opposed to the state, in their official capacities, provided that [the] complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re. Deposit Ins.*, 482 F.3d at 618 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005); *Ex parte Young*, 209 U.S. 123, 154 (1908). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (alteration in original) (internal quotation marks omitted). However, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re: Dairy Mart*, 411 F.3d at 372–73 (quoting *Ex parte Young*, 209 U.S. at 154).

Here, Brewer seeks prospective injunctive relief in the form of: (1) "[e]njoinment and estoppel by Officer Hashim, the State of Vermont, its agents and employees[,] from the further use and abuse of fraudulent data rife with material misrepresentations concerning [Brewer]"; (2) "[e]nactment of NYCPL 160.60 stipulating that when an individual wins on direct appeal[,] as [Brewer] did [here], a person's legal status is reset to where it was prior to arrest"; and (3) "[r]eturn of [Brewer's] firearm." (Doc. 1 at 10, ¶¶ 63–65.) Nonetheless, Hashim contends that the *Ex parte Young* exception is inapplicable because Brewer "does not identify any ongoing violation of federal law as to which this Court could grant prospective injunctive relief," and because, "while Brewer

seeks the return of his handgun, he does not allege that Hashim is in any way connected with the failure to return [the] gun or [its] continued retention." (Doc. 17 at 6.) In response, Brewer contends that Hashim's connection to the alleged injuries can be established by the following facts:[5] the "Law Supplemental Narrative" can be construed to establish Hashim as the author of the relevant press release and as the VSP officer who had supervision over the subject vehicle stop; Brewer's property receipt listed Hashim as the "Case Officer" in charge of the case; and both the Rutland Herald and the Brattleboro Reformer "offer[ed] . . . versions of the [subject vehicle] stop [which included] Officer Hashim[ as having] supervision [over the stop]." (Doc. 21 at 8.) Furthermore, Brewer contends that Hashim's knowledge that Brewer's prior conviction had been successfully overturned was revealed by the fact that the receipt for his seized gun indicated that the reason for the seizure was "Safekeeping" rather than "Court Evidence." (*Id*. at 9.)

Brewer's argument is unpersuasive. First, Brewer has not plausibly alleged that Hashim's involvement in the vehicle stop and subsequent conduct related thereto is "ongoing." *Verizon*, 535 U.S. at 645. The Complaint alleges only that Hashim used inaccurate information in seizing Brewer's firearm during the vehicle stop and thereafter authored a false press release about the stop. (*See* Doc. 1 at 4–6.) Insofar as the Complaint raises an argument that the continued retention of Brewer's firearm constitutes an ongoing violation of federal law, Brewer has not alleged that Hashim is connected with that retention. Moreover, if the Complaint alleges a violation of state law with

---

[5] Although Brewer concludes this section of his Opposition by stating that "[p]ersonal involvement defeats a defense of 'qualified immunity'" (Doc. 21 at 9), Hashim has not asserted a defense of qualified immunity (*see generally* Docs. 17, 23). Brewer's argument is, however, liberally construed to apply here.

respect to the retention of Brewer's firearm, a federal court may not "instruct[] state officials on how to conform their conduct to state law." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (concluding that the *Ex parte Young* exception is "inapplicable in a suit against state officials on the basis of state law"). Finally, Brewer's arguments relating to the Rutland Herald and the Brattleboro Reformer fail to allege any unlawful conduct on behalf of Hashim.

For these reasons, Brewer's claims against Hashim in his official capacity are barred by Eleventh Amendment immunity, and Hashim's Motion to Dismiss is GRANTED with respect to these claims.

### III. Individual Capacity Claims

Next, Hashim urges that all claims against him in his individual capacity should be dismissed on the grounds that they are "time-barred because they are more than three years old." (Doc. 17 at 7.) This case was commenced with Brewer's filing of the Complaint on December 9, 2016. (Doc. 1.) Hashim argues that each of the claims alleged therein accrued more than three years earlier, on April 8, 2013: the date of the vehicle stop, seizure of Brewer's firearm, and press release regarding the incident. (Doc. 17 at 7.) Alternatively, Hashim asserts that the Complaint fails to state a viable claim against him in his individual capacity and should be dismissed on that ground. (*Id*.) Finally, with respect to Brewer's state law individual capacity claims, Hashim argues that, "even if [Brewer] had sufficiently pled state-law claims that were not time-barred, this Court should decline to exercise jurisdiction over them absent allegations adequate to establish diversity jurisdiction or any viable federal claims." (*Id*. at 10 n.5.)

**A.      Statute of Limitations: Relation Back Doctrine and Tolling**

Dismissal of a complaint on the grounds that the relevant statute of limitations has

run is appropriate on a motion to dismiss "only if a complaint clearly shows the claim is

out of time." *Riley v. Brook*, Case No. 2:15-cv-00150, 2015 WL 7572308, at *2 (D. Vt.

Nov. 24, 2015) (citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

Further, "[t]he burden of establishing a statute-of-limitations defense rests with the party

pleading it." *Beaupre v. O'Connor*, No. 2:14-CV-256, 2015 WL 5530180, at *2 (D. Vt.

Sept. 18, 2015) (quoting *Agency of Nat. Res. v. Towns*, 724 A.2d 1022, 1025 (Vt. 1998)).

In opposition to Hashim's statute-of-limitations argument, Brewer asserts that,

because "[t]his suit is the progeny of *Brewer v[.] Rutland Herald*[,] with a similar fact set

and defendant," it is "protected by [the] Relat[ion] Back Doctrine." (Doc. 21 at 8

(citation omitted).)  But the relation back doctrine applies only to amended pleadings *in

the same action*.  The Northern District of New York explained:

> The relation back doctrine has application only in instances where an original
> pleading is amended.  If such an amendment satisfies the requirements of
> [Federal Rule of Civil Procedure] 15(c), the amended pleading "relates back"
> to the original pleading for statute of limitations purposes.  *The amendment
> does not, however, relate back to any prior proceedings which are not part
> of the action in question.*

*Rayo v. State of New York*, 882 F. Supp. 37, 40 (N.D.N.Y. 1995) (emphasis added).

Therefore, "[a] [p]laintiff cannot . . . properly argue that his . . . claim relates back to any

separate action he initiated [earlier]," *Lucchesi v. Experian Info. Solutions, Inc.*, 226

F.R.D. 172, 175 (S.D.N.Y. 2005), as "[t]he Federal Rules of Civil Procedure

contemplate[] the relation back of pleadings *only in the context of a single proceeding*,"

*id.* at 174–75 (emphasis added).  *See Palatkevich v. Choupak*, 152 F. Supp. 3d 201, 226

(S.D.N.Y. 2016) ("the concept of relation back permits parties to modify claims already filed, not to file entirely new lawsuits"). The Second Circuit has clearly rejected application of the relation back doctrine to pleadings filed in separate actions. *See Reliance Ins. Co. v. PolyVision Corp.*, 292 F. App'x 106, 107–08 (2d Cir. 2008); *see also Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000).

Applied here, Brewer cannot bring this action within the applicable statute-of-limitations period by claiming that his Complaint, filed in December 2016, relates back to the date he filed the Complaint in *Brewer v. Rutland Herald et al.*, a separate action filed in the Northern District of New York in 2014 and dismissed in August 2016. *See Brewer*, No. 3:14-cv-958, ECF No. 1, 2016 WL 4435232; *see also Gonzalez v. Portfolio Recovery Assocs., LLC*, Civ. No. 13-1350 (KM), 2013 WL 5334075, at *2 (D.N.J. Sept. 20, 2013) ("[W]hen an action is dismissed without prejudice, a separate, subsequently filed action does not relate back to the date of the first action's filing."). Further, none of the applicable statutes of limitations (discussed individually below) were tolled during the period between when Brewer filed his first action against Hashim and other defendants in July 2014, and when the claims against Hashim were dismissed in that case in August 2016. *See Brewer*, No. 3:14-cv-958, ECF Nos 1, 89, 2016 WL 4435232, at *1 n.1. "As a general rule, statutes of limitations are not tolled by bringing an action that is later voluntarily dismissed. Nor does the dismissal itself toll the running of the limitations period." *Elgendy v. City of New York*, No. 99 CIV. 5196(JGK), 2000 WL 1119080, at *5 (S.D.N.Y. Aug. 7, 2000) (citation omitted). "In fact, unless there is a

specific statute to the contrary, when an action is voluntarily dismissed, a party cannot

deduct from the statute of limitations the time during which the action was pending." *Id.*[6]

### B.      Section 1983 Claims: Accrual of Statute of Limitations and Merits

"Because 42 U.S.C. § 1983 contains no express time limit for bringing claims, the

Supreme Court directs courts to apply the statute of limitations applicable to personal

injury claims in the state in which the tort is alleged to have occurred." *Vaden v.*

*Connecticut*, 557 F. Supp. 2d 279, 283 (D. Conn. 2008) (citing *Wilson v. Garcia*, 471

U.S. 261, 280 (1985)); *see Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Pearl v.*

*City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).  The United States Supreme Court

explained in *Wallace v. Kato*, 549 U.S. 384, 387 (2007):

> Section 1983 provides a federal cause of action, but in several respects . . .
> federal law looks to the law of the State in which the cause of action arose.
> This is so for the length of the statute of limitations: It is that which the State
> provides for personal-injury torts.

Therefore, § 1983 actions that are filed in Vermont, as here, are subject to Vermont's

three-year statute of limitations for personal injury actions.  *See* 12 V.S.A. § 512(4).

However, "the *accrual* date of a § 1983 cause of action is a question of federal law

that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (first emphasis

added); *see Spak v. Phillips*, 857 F.3d 458, 462–63 (2d Cir. 2017); *Kaiser v. Cahn*, 510

F.2d 282, 285 (2d Cir. 1974).  Under federal law, accrual occurs "when the plaintiff has a

complete and present cause of action, that is, when the plaintiff can file suit and obtain

---

[6] As noted above, Brewer's earlier claims against Hashim were essentially "voluntarily dismissed," as Brewer requested that Hashim not be served, which led to the dismissal of Brewer's claims for failure to timely serve.  *See Brewer*, 2016 WL 4435232, at *1 n.1, *6.

relief." *Wallace*, 549 U.S. at 388 (citations and internal quotation marks omitted). Stated differently, the claim accrues and thus the statute of limitations begins to run, "when the wrongful act or omission results in damages[,] . . . even though the full extent of the injury is not then known or predictable." *Id*. at 391 (quoting 1 C. Corman, *Limitation of Actions* § 7.4.1, pp. 526–27 (1991) (footnote omitted)). The Second Circuit explained that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted); *see Holiday v. Martinez*, Docket No. 02-7848, 2003 WL 21242641, at *2 (2d Cir. May 29, 2003) (three-year statute of limitations applies to § 1983 due process claim, which accrues when plaintiff knows or has reason to know of the injury which is the basis of his action).

The timeliness of each of Brewer's § 1983 individual capacity claims—including the procedural due process claim and the privileges and immunities claim—is addressed below, along with the substantive merit of these claims.

### 1.      Procedural Due Process Claim

Brewer's procedural due process claim appears to be primarily directed at the seizure process during and after the subject April 2013 vehicle stop. (*See* Doc. 1 at 9.) Brewer claims that he "had a right to a court hearing where he could explain his circumstances, and possibly retrieve his property," and that he "could have produced a docket report he carried in his car to show conclusively [that] his conviction had been vacated." (*Id.*, ¶ 53.)

The Complaint reveals that Brewer became aware of the seizure of his firearm on April 8, 2013, the date of the traffic stop, when "[p]olice . . . took [his] weapon" from the glove compartment of his car and provided a "weapons receipt" regarding the transaction to him. (*Id.* at 5, ¶ 19.)  Given the above law, he had until three years after the date of the seizure—or until April 8, 2016—to file this lawsuit.  But Brewer did not file the suit until approximately eight months after that date, in December 2016.  Brewer's procedural due process claim based on the seizure of his firearm is thus time-barred.  Brewer's due process claim based on the press release, however, is not time-barred because the Complaint could be read liberally to indicate that Brewer did not become aware of the statements made therein until June 2014 (within three years of the December 2016 filing of the Complaint), when Attorney Brown sent him a letter including the document.[7]  (*Id.*)

Nonetheless, Brewer has not pled sufficient facts to support an individual capacity procedural due process claim against Hashim.  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property[ without due process of law,] and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).  "[S]tandard analysis under [the Due Process Clause] proceeds in two steps: We first ask whether there

---

[7] A less liberal, and more reasonable, reading of the Complaint indicates that Brewer became aware of the statements made in the press release within days of the April 2013 vehicle stop, making the claim time-barred.  In relevant part, the Complaint states: "Shortly after leaving Vermont, [Brewer] began seeing newspaper stories on Google published by two area newspapers purporting to offer accounts of [the] highway stop."  (Doc. 1 at 6, ¶ 31.)  But given the ambiguity of the phrase "[s]hortly after," and because the Complaint does not plead on what date Brewer "left Vermont," the Court does not rest its decision on these grounds.

exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Thus, in evaluating due process claims, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted).

Applying this law here, the Complaint does not adequately plead a procedural due process claim because it does not allege that: (1) Brewer had a property or liberty interest in the issuance of an error-free press release regarding the April 2013 vehicle stop; (2) Brewer was entitled to some pre- or post-deprivation process that he did not receive in connection with the seizure of his handgun during the subject vehicle stop; or (3) Hashim was responsible for the alleged failure to return the handgun to Brewer. (*See* Doc. 17 at 8; Doc. 23 at 4.) Moreover, despite Brewer's allegation that the press release contains false statements, including most significantly the statement that Brewer "has a conviction" (Doc. 1 at 8, ¶ 49),[8] the Complaint itself states that in March 2014, Brewer was told by the "Director of the FBI's Biometric Division" that a "conviction remained on his record" in the "FBI's criminal records database" (*id.* at 7, ¶ 39). As noted above, the Complaint alleges that Brewer's prior conviction "was set aside on appeal, resulting in no conviction" (*id.* at 5, ¶ 18), but makes no further allegations supporting this claim and attaches a document from the Circuit Court of Mobile County, Alabama that in fact

---

[8] Specifically, as noted earlier, the press release states that Brewer "has a prior conviction of domestic assault which, under federal law, prohibits him from possessing a firearm." (Doc. 17-1 at 2.)

contests it, indicating that Brewer was "on probation," was to have no contact with the victim, and was to pay costs within six months (*id.* at 12; *see also* Doc. 26). Although the words "SET ASIDE" are handwritten on the top of this document (*id.*), it is unclear who or what entity wrote those words and what their legal significance is.

Furthermore, Brewer attaches Exhibits to his supplemental brief filed after the May 23, 2017 hearing that reference his arrest for and conviction of a domestic violence offense in Alabama, which would disqualify him from possessing a firearm under 18 U.S.C. § 922(g)(9). (Doc. 29 at 18, "Exhibit A[:] Lower Court Imposes [Two-Y]ear Probation"; *id.* at 19, "Exhibit B[:] Appellate Court Sets Aside Conviction, Downward Modifies Probation to [Six] Months.") In yet another document recently submitted to the Court by Brewer, he contends that, in a June 7, 2017 letter from the Section Chief of the FBI's Criminal Justice Information Services Division, he was informed that "his FBI record has been updated to show [that] a conviction for domestic violence was dismissed on August 3, 2006." (Doc. 32 at 2, ¶ 6; *see id.* at 3.) This does not affect the Court's analysis here, however, as Hashim cannot have been required to know about this June 2017 letter back around the time when he was performing the vehicle stop of Brewer in April 2013; and Brewer has not indicated where, if anywhere, this alleged "dismiss[al]" was recorded as of the date of the vehicle stop and whether or how Hashim could have known of it at that time.

The Complaint also fails to allege that Hashim was personally involved in the VSP's alleged failure to return Brewer's firearm to him. (*See* Doc. 23 at 4.) "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). The Second Circuit instructed as follows regarding how to demonstrate the personal involvement of a supervisory defendant like Hashim:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873. Additionally, personal involvement "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)).

The Complaint does not adequately plead Hashim's personal involvement in the seizure or continued retention of Brewer's firearm. Moreover, the Complaint does not allege, nor could it, that Brewer had a property or liberty interest in either the issuance of an error-free press release or a particular pre- or post-deprivation process that he did not receive. Therefore, Hashim's Motion to Dismiss is GRANTED with respect to Brewer's procedural due process claims against Hashim in his personal capacity.

### 2. Privileges and Immunities Claim

Next, Hashim argues that the Complaint fails to adequately state a claim based on an alleged violation of the Privileges and Immunities Clause, and that the claim is barred

24

by the applicable three-year statute of limitations. Brewer's claim under the Privileges and Immunities Clause is that "Officer Hashim's Press Release Report[, which denied him a hearing or other court action, constituted] . . . oppressive treatment because a Vermont resident similarly situated would have received a court date." (Doc. 1 at 9, ¶ 52.) In other words, Brewer claims that, as a resident of a different state, he was treated differently than a resident of Vermont would have been treated after the traffic stop because a Vermont resident would have been given the opportunity to participate in a hearing presumably regarding both the vehicle stop and the seizure of his firearm. Hashim argues that the claim fails because "the Supreme Court has long held that the provisions of the Privileges and Immunities Clause were essentially nullified by its decision in the *Slaughter-House Cases*, 83 U.S. 36 (1872)." (Doc. 17 at 8.)

It is unclear when the statute of limitations accrued on Brewer's Privileges and Immunities Clause claim, and Hashim has failed to develop this argument. (*See generally* Docs. 17, 23, 30.) In any event, the Court finds that the claim is not adequately pled. The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. The object of the Clause is to "'strongly . . . constitute the citizens of the United States one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998) (alterations in original) (quoting *Paul v. Virginia*, 17 U.S. 168 (1868)).

There are two steps in an inquiry under the Privileges and Immunities Clause. The plaintiff must first "demonstrate that the state has burdened nonresident activity that is 'sufficiently basic to the livelihood of the Nation as to fall within the purview of the Privileges and Immunities Clause.'" *Schoenefeld v. Schneiderman*, 821 F.3d 273, 279 (2d Cir. 2016) (quoting *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988)). The Second Circuit has emphasized that "constitutionally protected privileges and immunities are *burdened* 'only when [challenged] laws were enacted for [a] protectionist purpose.'" *Schoenefeld*, 821 F.3d at 279 (alterations in original) (quoting *McBurney v. Young*, 133 S. Ct. 1709, 1715 (2013)). Further, a mere "facial distinction" between residents and nonresidents is insufficient to support an inference of protectionist purpose; courts should instead give weight to the purpose of the law. *Id* at 282. If this showing is made, the state must then demonstrate that "substantial reasons exist for the discrimination and the degree of discrimination bears a sufficiently close relation to such reasons." *Supreme Court of Virginia*, 487 U.S. at 67.

The Supreme Court has held that the "right to travel" is protected under the Privileges and Immunities Clause, as it is "firmly embedded in our jurisprudence" and "a virtually unconditional personal right." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (internal quotation marks omitted). But the Complaint does not identify a state law or municipal ordinance that may have been enacted for a protectionist purpose and was utilized to Brewer's detriment with respect to the vehicle stop or seizure of his firearm. Therefore, Hashim's Motion to Dismiss is GRANTED with respect to Brewer's claims against Hashim in his personal capacity under the Privileges and Immunities Clause.

**C.      Computer Fraud Claims under the CFAA and SCA**

Next, the Court considers the Complaint's allegations that Hashim engaged in computer fraud in violation of the CFAA and SCA.  (Doc. 1 at 8–9.)  The CFAA criminalizes "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer," 18 U.S.C. § 1030(a)(2)(C), and "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss," *id.* § 1030(a)(5)(C).  *See Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015); *Penrose Comput. Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 207 (N.D.N.Y. 2010).  The statute also provides a civil cause of action to "[a]ny person who suffers damage or loss by reason of a violation of this section."  18 U.S.C. § 1030(g).  "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information."  *Id.* § 1030(e)(8).

Similarly, the SCA makes it a crime to "(1) intentionally access[ ] without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed[ ] an authorization to access that facility; and thereby obtain[ ], alter[ ], or prevent[ ] authorized access to a wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. § 2701(a); *see Sewell*, 795 F.3d at 340.  As with the CFAA, the SCA establishes a civil cause of action, providing that "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind" may file suit.  18 U.S.C. § 2707(a).

Hashim correctly notes that a civil action under either the CFAA or the SCA is subject to a two-year statute of limitations.  (Doc. 17 at 10.)  *See Sewell*, 795 F.3d at 340.  Specifically, to be timely under the CFAA, a civil claim must be filed "within 2 years of the date of the act complained of or the date of the discovery of the damage."  18 U.S.C. § 1030(g).  And a civil action under the SCA must be commenced no "later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation," 18 U.S.C. § 2707(f), meaning, "the limitations period begins to run when the plaintiff discovers that, or has information that would motivate a reasonable person to investigate whether, someone has intentionally accessed the 'facility through which an electronic communication service is provided' and thereby obtained unauthorized access to a stored electronic communication," *Sewell*, 795 F.3d at 340 (quoting 18 U.S.C. § 2701(a)).

Applied here, the statute of limitations under the CFAA would have run within two years of either the date of the act Brewer complains of or the date of Brewer's discovery of the damage under the Act.  And under the SCA, the statute would have run within two years of the date Brewer discovered or had a reasonable opportunity to discover a violation under the Act.  Affixing the accrual date at the latest date possible— June 4, 2014, the date when the Complaint alleges Attorney Brown sent Brewer a copy of the press release (*see* Doc. 1 at 5, ¶ 22)—Brewer's filing of the Complaint in December 2016 was beyond the two-year limitations period and thus too late.

Even if the Complaint had been filed within the applicable two-year period, the computer fraud claims fail to state a claim, as the Complaint makes no allegations to

support application of either the CFAA or the SCA against Hashim.  For example, there are no allegations that Hashim intentionally accessed, without authorization, a "facility through which an electronic communication service is provided," as required under the SCA.  18 U.S.C. § 2701(a)(1).  Nor are there allegations that Hashim "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from any protected computer," as required under the CFAA. 18 U.S.C. § 1030(a)(2)(C).

For these reasons, Hashim's Motion to Dismiss is GRANTED with respect to Brewer's computer fraud claims against Hashim in his personal capacity.

## IV.    State Law Fraud and Libel Claims

Having dismissed each of Brewer's federal claims against Hashim either for being untimely filed or for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6), as discussed above, all that remains are Brewer's state law fraud and libel claims against Hashim.  (*See* Doc. 1 at 8–10.)  Under the fraud claim, Brewer alleges that Hashim's statement that Brewer "'has a conviction'" in the press release about the subject vehicle stop, "was a fraud because the conviction was vacated years earlier on direct appeal." (*Id.* at 8, ¶ 49.)  Under the libel claim, Brewer alleges that the press release makes various false allegations, including that Brewer was convicted of domestic violence and violating federal gun laws; was published by the Rutland Herald, the Brattleboro Reformer, and various online sources; and caused Brewer to "experience[] shame and disgrace, ridicule, contempt, suspicion[,] and added scrutiny by friends and family, as well as physical, emotional, and psychological distress, in addition to property

loss in Vermont." (*Id.* at 10, ¶ 59.) Brewer further alleges that the damage to his reputation "is continuous and permanent" and has frustrated his attempts to seek employment. (*Id.*, ¶ 60.)

In any civil action in which original federal jurisdiction is established, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over state law claims, however, if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.").

Applying this law here, the Court declines to exercise supplemental jurisdiction over Brewer's state law claims. The general practice in the Second Circuit is that "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (internal quotation marks omitted); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Thus, Hashim's Motion to Dismiss is GRANTED with respect to Brewer's state law claims of fraud and libel.

## V.     Leave to Amend

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted).  An opportunity to amend is not required, however, where "[t]he problem with [the complaint] is substantive," such that "better pleading will not cure it" and thus amendment is "futile." *Id.* (a "futile request to replead," even by a *pro se* litigant, "should be denied"); *see Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("leave to amend a complaint need not be granted when amendment would be futile").  An amendment is "futile" if the amended pleading would not withstand a motion to dismiss. *See Jones v. Phelps Corp.*, No. 3:14–cv–84 (GLS/DEP), 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014).  Given the facts alleged in the Complaint, and for the reasons discussed above,[9] the Court finds that amendment would be futile, and thus Brewer is not granted leave to file an amended complaint.

## Conclusion

For these reasons, Hashim's Motion to Dismiss (Doc. 17) is GRANTED and the Complaint (Doc. 1) is DISMISSED without leave to amend.  Given this ruling, Brewer's

---

[9] It is also noteworthy that this is at least Brewer's second lawsuit against Hashim involving the April 2013 vehicle stop and thus his second chance to adequately plead the claims alleged in the Complaint.  *See Brewer*, 2016 WL 4435232.  In fact, Brewer himself states in his "Supplementary Filing in Support of . . . May 23 Court Appearance" that this is his *third* lawsuit against Hashim which "feature[s] the April 8, 2013 highway stop." (Doc. 29 at 16.)  Brewer asserts: "The claims put forward [in this lawsuit and two earlier lawsuits] arise out of the same set of facts." (*Id.*)

pending Motion to Set Aside Forfeiture (Doc. 10) and Amended Motion to Set Aside

Forfeiture; to Cure Improper Service (Doc. 14) are DENIED as moot.  The Clerk of

Court is directed to enter judgment in favor of Defendant Hashim.

     Dated at Burlington, in the District of Vermont, this 27th day of June, 2017.

               /s/ John M. Conroy       
               John M. Conroy
               United States Magistrate Judge